Court of Appellants, James Pintar and Trisha Pintar, Elephant in the Room Summary Judgment Order You don't have a final judgment, and I recognize your argument on this. And we can say, well, from the totality of the circumstances, there is a dismissal, and this is a partial summary judgment, and there is a dismissal without prejudice. But where do we get, there's no entry of final judgment here. I think, well, as you know from the history in the case there, when we had, after summary judgment, we have one remaining claim for the breach of insurance contract claim that was going to go to trial a year ago, in May of last year, and shortly before the trial, we worked out a resolution, and part of that resolution included the stipulation in order to dismiss that claim and reserving the right to appeal the court's earlier ruling against the plaintiff's breach of the good faith covenant claim. It's our contention that Rule 54 talks about what is a judgment, and a judgment can be any decree or any order of the district court that would support an appeal. It's our position that in this circumstance that the appellate review of the court's, the district court's dispositive ruling against a vital part of the plaintiff's case, that breach of the good faith covenant claim, is a thing that was fully developed on summary judgment, and it is something that can be reviewed on appeal. The stipulation in order that was a dismissal with prejudice, but that is a stip in order. That is a final order of the district court. Except the district court didn't enter judgment. That's a, you know, you can dismiss some claims. You can dismiss other things. It doesn't get you the final judgment, and I realize this is technical. It seems picky, and I grant you that, but it's jurisdictional, and we've bounced a whole lot of cases that are kind of similar, and so you've got to enter judgment. That's my problem, and I just, you know. Well, and to elaborate further on that, when the district court issued the summary judgment order during the dispositive motion phase and granted summary judgment on the, against the breach of good faith covenant claim, the court did not make a ruling under 54B that there should be no just cause for delay, the magic language in there, and it was not certified at that time. The case just continued on like most cases do. I referenced this in my supplemental briefing. Had this case gone to trial, we had a judgment, a jury verdict, either way, either side. Either side could have appealed that, and this summary judgment ruling could have, is something that has merged into that final appeal. No, you didn't waive anything by that. I grant you that. I guess from our perspective, the case cited in the court's order was Aloha Airlines. That talked about a party who was filing an appeal immediately upon the issuance of a partial summary judgment. That would be an interlocutory appeal, which is disfavored only under certain circumstances can it be allowed. This is not that. And so it's our contention that the stipend order, that dismissing the case where both sides specifically reserved the right to appeal and it was approved by the district court, is a final appealable order that brings us here today. So how do you respond to defendants' new argument that the dismissal of the state claims without prejudice makes this non-final? Well, it was a dismissal of claims with prejudice, if I'm not mistaken. The stipend order that we did, it dismissed, well, because we reserved the right to appeal. We reserved this issue. We carved this out. This is normally a stipend order to dismiss, closes the case out, you can wrap it up and you're done. And you don't bring anything back. Actually not. There's a final step of judgment. But you've got a lot of parts here that are kind of incomplete. And, again, I understand you saying, hey, look, for all practical purposes, we were done. I get that. But practical purposes and jurisdiction are two different things. And jurisdiction is vital. Otherwise, we're not here, right? And I get that. I think it's our interpretation, our understanding that it was a final order under Rule 54 and it was appealable. And that was the base. And it was approved by the district court and the parties all stipulated to it. Let me give you an example. We had a case where some years ago where the parties, the case was dismissed without prejudice, with leave to file to amend. They didn't amend. They appealed. It gets all up to our en banc court and we say there's no jurisdiction because there's no final judgment. So I speak from the pain of experience here that you don't want to get too far into this without wrapping up some of this stuff. I appreciate that. And I was thinking about the comparison. If you have a Rule 12b-5 motion that dismisses a complaint and the district court doesn't give leave to amend under Rule 15, could you appeal that? Because that would be sort of the end of the case. And it's my contention that would be a final order of the court. I guess the question is did the clerk's office issue a formal judgment on that one sheet of paper saying that it's a final judgment? And perhaps that's the situation we have here. In this case, the clerk's office did not issue a normal judgment you might see after a jury verdict or after a summary judgment that disposes the whole case because of the very nature of it being a stiff due dismiss and the reservation of rights. And we were talking about an earlier ruling of the case for the partial summary judgment which brings us here today. I guess the question is does the fact that the clerk's office did not issue a formal judgment document, does that mean that this cannot be construed as a de facto judgment? I think when you look at where we're at procedurally with the parties agreeing to it, the district court approving it, and the fact that we're not appealing anything to do with the claim that was dismissed, the claim that we resolved, it was only for the claim that was merged into the final decision that brings us here today. And I would contend that. I want to make sure you get to the merits. I understand. I understand. And maybe we don't get to the merits because this could stop everything. So let me – my position is that we are here appropriately, and I think the case law supports that it was merged into this final stiffen order of the court. So we are here, if we do get to this point, on the summary judgment against the partial summary judgment against the breach of good faith covenant claim. This is an insurance contract case. My client's had some severe damage to their home in 2018 by two massive trees that fell on it. They filed a claim. The claim was accepted. And then a year later, while the work was going on, in November 2019, they had a water damage event that flooded the house and just a terrible sequence of events for them. CSAA, the insurer, did accept both claims. You know all this. They accepted the claims. They paid out a lot of money, almost over $300,000 in various aspects, different coverages for this case. And they did pay that out, and that's great. But what they didn't pay out was before my clients could move into the house, they had to hire a final contractor to come in and finish out the house. And from all the water damage, it came through the roof. And this contractor, a company called KCG Development, I presented those records on summary judgment, as well as the interrogatory testimony of Tricia Pintar. Those records indicate that extensive repairs had to be completed on the home. It's our contention that that was something that CSAA refused to pay. They were aware that my clients were looking for a final contractor to close out the house. So this is not a case where this was just a phantom bill that just appeared out of nowhere and, oh, by the way, CSAA, we need $150,000. It's not. They were aware that my clients were looking for a contractor. They had communications about it. But when the final bill came to pay the money, they wouldn't pay it. And I understand the respondent, the appellee has contended, well, some of the repairs were for like upgraded kitchen cabinetry and things of that type. Well, I agree. But some of the repairs were not. Some of the repairs were related exactly to the water damage. And what does this create? This creates disputed factual issues where they may argue that, well, those repairs we're not paying, but these repairs maybe we should pay. But the fact is CSAA didn't pay them at all. They stiffed my clients on paying this bill. My clients, Mr. Pentar had to invade, he's elderly, he had to invade his retirement. They had to actually pull out nearly $150,000 of their own money to pay this when it should have been paid by CSAA. This was about finishing out the house. You pay insurance to finish off the project. It doesn't have to come back as good as new or totally brand new, but back to the condition it should be in. And, you know, the Nevada case law I cited that talk about, I mean, I don't have to go through it. You know it all. But breach of the good faith covenant, generally that's a factual issue. Nevada Supreme Court said where the good faith is present is a question of fact. So how did the district court err? How did the district court err? The district court err by not applying that law. The district court did not apply the relevant case law in Nevada. Even the Ninth Circuit case, the Amadeo case, talks about how insurance contracts, insurance bad faith cases, I cited in my brief, are matters of fact for a jury to decide. That's often the case. And so I think, I'm going to paraphrase here, but I think what the district court decided is that the insurance company had a reason, a reasonable basis for denying the claim. And you contend that they did not. Right. Okay. And you think the reason that the insurance company gave was not reasonable because of the expert report that they relied upon? Well, there were several expert reports. Even our own expert report, Mr. Peterson, testified that he thought it was unreasonable that they didn't pay this $150,000. Is it Rimkus? Do I have that? Rimkus is an engineering company that was hired by the insurance company to do an evaluation and report on the case. And they determined a certain value. And then there was another expert that did another value. And then it was crazy with all the experts. But the question is really kind of simple in terms of the district court has to have decided that the insurance company had a reasonable basis for not paying this part of the claim, right? Because they said they had coverage and that they didn't pay this part of the claim. And it seems like the insurance company pointed to a couple of different reports. And the ones that I understand they're relying upon is a report that the scope of which did not cover all of the damage. I mean, just chronologically, it was prepared prior to the extensive water damage. Do I have that wrong? Well, I think there's perhaps more to it. What the insurance company was covering, they were paying all the bills as we got along. And this final billing was to complete the house. This was the next and final logical step. I'm just asking it every way I know how to ask it. Why do you think that the district court was wrong in understanding that the insurance company had a reasonable basis for the position it took? Because that issue right there, is there a reasonable basis? There's your factual issue. Not always. It's not always. I appreciate that. If that were the rule, nobody would ever get past it. I appreciate that. So in this particular case, can you flesh that out for me? I think that where the district court erred is not taking fairly into consideration, not weighing on a credibility determination on summary and judgment, but not weighing the facts that were right there in front of it. Is it reasonable for the insurance company to deny paying this final billing that was for the final coverage on this case to bring this house back to a livable condition? My clients were living outside in a shack, in a tent, for a long time. And you know, in Vegas, it's not so nice. They're in certain times of the year with a swamp cooler out there. Until this house could be in a livable condition, this final contractor was the billing so they could move back into their house. It was not the district court error by finding it was reasonable for the insurance company to not pay that. That question of reasonableness is what we contend is a factual issue. That's what a Nevada jury should decide. You want to save your time for rebuttal? Thank you so much. Thank you. You bet. Good morning, Your Honors. May it please the Court, David Zanio on behalf of CSAA. I'd like to start with the initial supplemental briefing issues that have come along in the case. There were a couple of discussions earlier this morning with my friend regarding the jurisdictional issue. And in my supplemental briefing, I talked to the Court about the two issues, one which was raised today regarding the final judgment of the case. And the second issue I brought up was whether it was possible for the Pintars to appeal the decision immediately following the district court's order in an interoculatory fashion. And I made an argument that there's some distinctions between the claims. And I understand that those questions were not asked of my friend. But I'd at least like to mention those issues. You raised the Nevada state claim and said it's unexhausted on it. If I understood your opponent correctly, he thought it was with prejudice, and you think it's without prejudice? Or do I have this all wrong? Your Honor, I don't believe that it – well, I believe it was with prejudice, the dismissal. But that doesn't mean it's a final judgment. And my understanding of the reading of the rule is the final judgment. And the last part I'll make regarding that issue is my friend talks about the fact that we stipulated to allow or withhold appellate there to be an appeal. But I don't believe that parties can stipulate to waive jurisdictional issues because I want to waive a jurisdictional issue. This Court doesn't have to take my stipulation as waiving that. If you don't meet the jurisdictional issue, then you're done. And in this case, since there was no final judgment, CSAA believes that there should be no appeal in that sense. What could have happened and how to preserve the issue in this particular case, the parties did agree to resolve the case under the contractual claims. It could have been in the sense of a stipulated judgment. It could have been where the parties paid a certain amount. There was a judgment form. There was a satisfaction of that judgment. Are you familiar with our decision long versus, I think it's City, County of Los Angeles that addresses this point about finality of judgment? No, Your Honor. So I think in that case we have said that you don't have to have a single document to have a final judgment. And it instead triggers off of whether, and let me read the actual quote, whether the district court's order is a full adjudication of the issues and clearly evidences the judge's intention that it be the court's final act in the matter in conjunction with the parties proceeding before the appellate court as if separate judgment has been entered. And it's that last part that I'm interested in. Is there anything about how the parties have proceeded here that indicates that you don't believe a final judgment was entered? Well, interesting, just that there's no final judgment. Judgment is a… The case in the district court is over. There are no claims. There are no parties. There are no disputes. It's done. It is, Your Honor, except for the fact that when the Pentars agreed to waive part of their complaint in the underlying complaint, Unfair Claims Practices Act, the court dismissed that without prejudice. Well, the long case, the state, the pendings or the trailing state claims dismissed without prejudice. It didn't matter to us as the court. Still said that there was finality. Yes, Your Honor. And then I guess the underlying issue is why is there something in the court, in the law, that talks about a judgment, a final judgment? And, again, I understand that the issue of a stipulation being a dismissal and the party's actions that, yes, there's nothing further that was going to take place in the case as long as the Pentars did not try to revive the claim that was dismissed without prejudice. But, again, the underlying issue of how to rectify the situation would have been very simple, a simple stipulated judgment, pay the judgment, and now we have finality of it. Yeah, these are curable problems. We understand that. Would you mind turning to the merits for a minute? I will. So in this particular case, I believe if this court accepts everything that my friend has mentioned, the fact that CSAA did not pay the claims for the That alone simply speaks to contractual issues. There's nothing in the record that talked about the breach of covenant, of good faith and fair dealing, or punitive damages. In other words – Well, I have a question on that point. The way I read the Rimkus report is that it deals with the first event, but it does not deal with the second event. And so the question about good faith here is whether the insurance company had a basis to believe that the stuff they didn't pay for didn't come within the policy. And I understand the insurance company to primarily be relying on the Rimkus expert report as what is and isn't covered. But that report doesn't deal with event number two at all. So what do we do with that? Your Honor, I believe there's a supplemental report that Rimkus had done, although there's another part of it, and that's the public adjuster. There's a supplemental report that – I'm with Judge Forrest on this because my notes indicate that that report was authored before what I'm going to call the flooding event. I think you're right, Your Honor. And you think there's a supplemental report from Rimkus that deals with the flooding event? No, I think there was two reports, but not the flooding one, Your Honor. Okay, so that's the problem that at least two or three of us have.  So maybe all of us do. So could you speak to that? I understand, of course. AAA also relied upon a public adjuster named Peggy Martin at some point in the proceedings. Hold on. On that report, did you raise that in the district court? The public adjuster? Yes, Your Honor. Did you raise it at the time, pre-litigation? During the pendency of the litigation? No, during the pendency of the back-and-forth with the insured. The question is, did your client have a reasonable basis to not be paying this claim? And I didn't see that that – I didn't see anything other than Rimkus in terms of communicating with the client. Your Honor, I cited the Peggy Martin issue in the – When did your client first – I appreciate that, but I'm trying to figure out when your client first leaned on the – and I don't mean that disparagingly, but invoked that second report from the public – what is it, public? Adjuster. Adjuster. When did they first invoke that as a rationale for not paying the claim? After there was allegations that AAA should be paying certain things within the claim, and they weren't, such as upgraded cabinets or those types of things. So the Pintars then went out and obtained a public adjuster, which this Court knows from other areas, a public adjuster is solely on the side of an insured and not the insurance company. They're adverse to an insurance company. In this particular case, the public adjuster actually has testified in the record, on the record, that CSAA went above what they were supposed to do. And, in fact, there was a comment made this morning that they had to sleep in a tent on their property. The record talks about the fact that CSAA agreed to put them up in housing during the course of the construction. I'm just focused back to the water damage. I think that's what they're trying to get at.  And to the extent that there's some upgrades, I certainly don't think there's any – I didn't hear any pushback about paying for that. But what about the rest of the scope of the work there? Your Honor, if there was an issue with the flooding damage and those not being covered by the cost of the construction, Ms. Martin, the public adjuster, would have made that apparent in the record. Hey, CSAA, you owe a duty to pay for these items of damages, and you're failing to do so. That was never discussed by Ms. Martin towards CSAA. So I believe it's reasonable for CSAA to rely on the lack of information coming from the public adjuster that they're not satisfying their duty. When was the public adjuster hired? Your Honor, I don't have that information off the top of my head. By the insured, right? Yeah. Was it before or after the decision of not to pay? Your Honor, it was after the decision to not pay everything, Your Honor. And let's not forget, there was over $300,000 paid in this case. What's the basis for the decision not to pay everything in the first instance? It can't be RIMCAS because that predated. So what's the basis for that decision? I believe CSAA had looked at the totality of the circumstances and had decided that while certain payments were reasonable, the contractual language of the policy didn't warrant certain things being paid. Well, did you offer to pay some of it? I believe so, Your Honor, yes. Can you give me the record site? There's over $300,000 that were paid, Your Honor. No, no, no, I'm talking about the— So there's the initial claim and then there's a subsequent claim and there was $300,000 that was paid or some such amount. It's a lot of money. And the insurers then took the position that the interior is not finished. And I don't hear that contested. I don't see that as a contested point in this record. So, Judge Forrest, I think maybe all three of us are now trying to figure out what's the basis for not completing the work. I certainly understand if some of it was upgrades and whatnot, but I still feel like there's a gap here in the record. And we're looking to you to tell us why you think your client was reasonable in refusing to pay that claim, some part of that claim. And, Your Honor, my understanding is that some of the damages that the final construction company were trying to obtain on behalf of the Pentars was structural in nature, which goes back to the Remtis report, not necessarily the flooding aspect, but the structural aspect of the home. Can you give us record sites about where we should look to pinpoint your client's good faith decision to deny that claim, the basis for it? Well, Your Honor, if I may for one second, AAA, it's not the burden of AAA to show the answer to good faith. I'm asking the question. I'm looking at this record, and I need to know. They say you didn't have a reason, and we're giving you an opportunity. What was the reason? The district court thought you had a good faith basis. What's the basis for it? I believe the district court cites that in their order, Your Honor. I don't have a specific record of it here today, a site to point to for that specific issue. I don't think the district court cited to the public adjuster or assessor.  That's correct, Your Honor. So that wasn't part of the district court decision. No, Your Honor, but the burden issue I think should be discussed here today. It's not AAA's, CSAA's duty to act in the good faith. It's the plaintiff's burden to show that they breached the covenant to do so. What we're telling you is they've done a pretty good job. Well, to act unreasonably, outrageously, and recklessly disregarding facts that it knows where it doesn't pay. In other words, you provided me. May I stop you there? You know, a lot of states have adopted what you refer to as the genuine dispute doctrine, and the federal district courts in Nevada have referenced it. But the Nevada Supreme Court has not. Is that correct? I believe so, Your Honor. You believe it has? No, I believe you are right. So that takes it into a slightly different category because under the genuine dispute doctrine, you've got a pretty, in terms of violation of the covenant, you've got a pretty broad protection. But Nevada hasn't adopted it yet. So you're kind of back to the statute on that, which isn't entirely clear what the parameters are, at least how I read Nevada law. That's understandable, Your Honor. But I believe looking at the totalitarian circumstances, it would be recognizable to see at some point whether an insurance company acts in an outrageous, reckless manner as opposed to just a simple value dispute. If you say your kitchen or your cabinets or any aspect of the home should be repaired for X amount of dollars and CSAA uses their internal components, don't forget that CSAA has the ability to adjust homes on their own. You don't need an expert. In this case, they got an expert, but CSAA also was adjusting things. And if they say that it should be Y amount to make the repairs, then it just is a simple value dispute. That's why we're looking for places in the record where you can show us what you did offer to pay or a rationale for refusing to pay any of what they requested there in that last phase of this claim. Yeah, I don't believe that. I mean, there was many thousands of pages in this appeal, Your Honor. I don't believe that there's anything specific in the record that talks about this is what AAA agreed to pay versus what they didn't pay. Okay. So you didn't, but I don't think you could have relied on the Rimkus report just chronologically. And I don't think the district court relied on the public adjuster's report. I don't see that that was the reason that you gave to the insured. And now you're suggesting that maybe there wasn't, that your own adjuster could do his or her own work. Does the record support that that happened here? I believe that that is within the record, Your Honor. I don't have the citation in front of me, but, of course, AAA, as part of their natural duties is to adjust claims that come in on their own. The question becomes whether they need the outside help of an expert or not. And I believe the district court also focused on the expert, the plaintiff's expert in this case, that said that they did not find anything that CSA did that would meet the standard of the breach of covenant of good faith and fairness. So at the end of the day, I'm going to ask your opponent this question, too, and your answer may be different. How much difference are we talking about? Forgetting, you know, punitive damages and all the other damage, how much is raw economic damages? What's the difference between what they wanted and what you thought you should pay as to the second part of this? I believe, and my friend will obviously talk to that as well, I mean, obviously the case resolved at some point for the contractual dispute for many different reasons, but it was somewhere in the neighborhood of $150,000 to $200,000, I believe, Your Honor. Okay, thank you. Anything further, Judge Forrest? I think we're all set. Thank you, counsel, for your patience with our questions. Thank you, Your Honor. You bet. Counsel, you've reserved a couple minutes of rebuttal time. Thank you. You bet. May I ask my damage question first? Yes. Do you agree with your friend that it's about a $150,000 difference between what your clients thought they were owed as opposed to the upgrades? That's the magic number because that's what they had to pay out of pocket. And was that part of the contractual damage settlement? No. Okay. So that's the raw economic, that's the difference left. That's the value of this case. Okay. Thank you. Excluding punitive damage. Right. So just real quick, I wanted to cite where in the record, I included in the excerpts of record the KCG development contract, and from pages 040 to 041 is an itemization of the repairs that they were retained to do. And this could be, I appreciate what they're saying, we're going to put in cabinets versus nice luxury cabinets. I get it. The itemization is there in the excerpts of record as to all the work that was being done to finish the house. They couldn't move in until this work was completed. And I get it, the CSAA would say, well, we're not paying for some of that stuff. You know, we'll give you this, we're not going to give you that. We're not going to give you the nice doors, we'll give the cheap doors, whatever insurance companies do. But it's all right here. And we never got there. The Pintars never got there because CSAA just said, well, we're just not going to pay it. We paid all we're going to pay. They said it in their interrogatory answers. Defendants paid all monies under the policy that related to the claims regarding the losses. That's their position. They paid what they were going to pay and not a penny more, leaving my clients having to come out of pocket for this. I mean, the whole idea behind homeowners insurance is to cover water damage events and trees falling on there and things of that type. That's why you pay the premiums every month. And when you get an insurance company not willing to go, they don't have to go the extra mile. How about the extra yard just to pay what you were going to pay and what you should pay? And I get it that they could dispute, well, we're not going to pay for some of these upgrades. Well, okay, those are factual disputes. We couldn't even get into that at trial because that claim on the breach of the good faith covenant was thrown out. We can never get there. And that's why we're here. Thank you, Your Honors. Thank you both. We'll take that case under advisement and we'll stand in recess for the day. All rise. Hear ye, hear ye. All persons having had business with the Honorable, the United States Court of Appeals for the Ninth Circuit will now depart. For this court, for this session, stands adjourned. Thank you.
judges: THOMAS, CHRISTEN, FORREST